NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SEBASTIAN CALABRIA AND YANESIS PASQUELLA,  :  <br><br>Plaintiffs,  :  <br><br>v.  :  <br><br>STATE OPERATED SCHOOL DISTRICT FOR CITY OF PATERSON, DENNIS CLANCY, EILEEN SHAFER, JACK PERNA, JAMES SMITH, BRENDA PATTERSON, JOHN DOE 1-4, being fictitiously named defendants,  :  <br><br>Defendants.  : | **Hon. Dennis M. Cavanaugh**<br><br>**OPINION**<br><br>Civil Action No. 06-cv-6256 (DMC) |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by Defendants the State-Operated School District of the City of Paterson ("District"), Dennis Clancy, Eileen Shafer, Jack Perna, James Smith, Brenda Patterson and John Does 1-4 (collectively "Defendants") for summary judgment pursuant to FED. R. CIV. P. 56(c). Pursuant to FED. R. CIV. P. 78, no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Defendants' motion for summary judgment is **granted**.

I.   BACKGROUND

Plaintiffs Sebastian Calabria ("Calabria") and Yanesis Pasquella ("Pasquella") (collectively "Plaintiffs") bring this cause of action alleging: (1) a deprivation of a right to free speech and due process under 42 U.S.C. § 1983, et. seq. due to false accusations and a malicious prosecution; (2)

violation of the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1, *et. seq.* for the employment retaliation of "whistle-blowing activity"; (3) violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-12 for wrongful reprisals from a "protected activity"; (4) malicious prosecution; and (5) civil conspiracy. Plaintiffs amended their Complaint to include a claim for common law wrongful discharge. This cause of action arises from the August 4, 2004 suspension of Calabria and the September 17, 2004 dismissal of Pasquella from the District.

Calabria has been employed with the District since 2000, holding numerous teaching and supervisory positions. Pasquella served as a teaching assistant with the District from 1999 until her termination in the fall of 2004. In 2004 Plaintiffs held positions in the Paterson Educational Partnership-Twenty First Century ("PEP121"). On or about March 8, 2004, Calabria, in his capacity as Educational Supervisor of PEP121, wrote a letter addressed to "To Whom It May Concern" complaining that an employee allegedly violated the Paterson Board of Education Policy Manual Code of Ethics. The letter was signed by Calabria and non-parties. The letter was given to Eileen Shafer, the Assistant Superintendent for Human Resources. The letter alleged that on March 4, 2004, Jack Perna, Director of Grant and Development and Evaluations, through his secretary, Sandy Susino advised Calabria and two other individuals that students' identities and test scores needed to be fabricated in order to secure state funding.

Several months later, the District commenced an investigation to determine if Calabria and Pasquella prepared fraudulent over-time payment requests. The District believed that as Supervisor of PEP121, Calabria improperly approved over-time payment requests of Pasquella and other employees. Following this investigation, the District suspended Calabria on August 4, 2004 with pay, pending the outcome of his alleged involvement in the approval of fraudulent over-time

payment requests. The District referred the matter to the Passaic County Prosecutor's Office in the fall of 2004. Calabria was suspended for two years and was reinstated as a full-time employee on or about September 1, 2006. Since his reinstatement, Calabria has been transferred to two different positions. Calabria currently serves as Supervisor of the Urban Leadership Academy for grammar school students. While suspended, Calabria received no incremental pay increases.

Finding that Pasquella falsified her time records, the District sent her a letter on September 17, 2004, notifying her of her dismissal. The District continued to pay Pasquella through November 17, 2004. Pasquella then filed a Notice of Tort Claim on December 15, 2004.

Defendants look to dismiss Plaintiffs' Complaint as a matter of law because the Complaint was filed beyond various statutes of limitations. Specifically, Defendants contend that Plaintiffs filed their Complaint beyond the two year New Jersey statute of limitations for § 1983 claims, beyond the one year statute of limitations for CEPA claims, beyond the two year statute of limitations for NJLAD claims and beyond the two year statute of limitations for New Jersey tort claims. Additionally, Defendants assert that the record is lacking competent evidence to support the alleged violations.

## II.    STANDARD OF REVIEW

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). The moving party bears the burden of showing that there is no genuine issue of fact. Id. "The burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate

burden of persuasion, which always remains on the moving party." Id. The non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, but must produce sufficient evidence to support a jury verdict in his favor. Fed. R. Civ. P. 56(e); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "[U]nsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). However, "[i]n determining whether there are any issues of material fact, the Court must resolve all doubts as to the existence of a material fact against the moving party and draw all reasonable inferences - including issues of credibility - in favor of the nonmoving party." Newsome v. Admin. Office of the Courts of the State of N.J., 103 F. Supp.2d 807, 815 (D.N.J. 2000) aff'd, 51 Fed. Appx. 76 (3d Cir. 2002) (citing Watts v. Univ. of Del., 622 F.2d 47, 50 (D.N.J. 1980)).

### III. DISCUSSION

#### A. Section 1983

Plaintiffs claim a violation of 42 U.S.C. § 1983, *et. seq.* for false accusations and a malicious prosecution, thereby depriving Plaintiffs a constitutional right to free speech guaranteed by the First Amendment and due process guaranteed by the Fifth and Fourteenth Amendments. Plaintiffs claim that the impetus of this deprivation stems from the March 8, 2004 letter. Defendants, however, assert that Plaintiffs' claims are barred by the statute of limitations. When assessing the statute of limitations for a § 1983 action, this Court must look to the personal injury statute of New Jersey, N.J.S.A. 2A:14-2. See O'Connor v. City of Newark, 440 F.3d 125 (3d Cir. 2006). The statute provides that, "every action for injury to the person caused by the wrongful act, neglect or default

of any person within this State shall be commenced within two years. . . after the cause of any such action shall have accrued." N.J.S.A. 2A:14-2.

The applicable two year statute of limitations is triggered by Calabria's suspension on August 4, 2004 and Pasquella's termination on September 17, 2004 with her last paycheck received on November 17, 2004.

To assert a *prima facie* claim under Section 1983 a plaintiff must show that:

> (1) the defendant initiates a criminal proceeding; (2) the criminal proceeding ends in the plaintiff's favor; (3) the defendant initiates the proceeding without probable cause; (4) the defendant acts maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffers a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

Wiltz v. Middlesex County Office, 249 Fed. Appx. 944, 949 (3d Cir. 2007); see also Torres v. McLaughlin, 163 F.3d 169, 179 (3d Cir. 1998) (applying Fourth Amendment malicious prosecution elements to denial of due process). Here, although the matter was referred to the County Prosecutor, no charges were ever brought against Calabria or Pasquella. In Epperson v. Wal-Mart, 373 N.J. Super 522 (App. Div. 2004), the court found the arrest and charge of shoplifting was sufficient to satisfy the first prong under common law malicious prosecution.

Plaintiffs, however, assert that the refusal of a grand jury to return an indictment is sufficient to maintain an action for malicious prosecution. See Geyer v. Faiella, 279 N.J. Super. 386 (App. Div. 1995). Reliance on Geyer is misplaced because that court was presented with the malicious prosecution issue on a motion to dismiss, and not at the summary judgment stage. Id. at 389. This Court will not entertain whether Plaintiffs satisfied the first prong of the Wiltz test because the

record fails to demonstrate that Plaintiffs were subjected to a grand jury inquiry.

Relying on Hartman, Plaintiffs also attempt to persuade this Court that a retaliatory investigation may be actionable under a § 1983 action. See Hartman v. Moore, 547 U.S. 250 (2006). Plaintiffs, however, fail to recognize Note 9 that provides, "[there are no] claims that simply conducting a retaliatory investigation with a view to promote a prosecution is a constitutional tort . . . [w]hether the expense or other adverse consequences of a retaliatory investigation would ever justify recognizing . . . a distinct constitutional violation is not before us." Id. at 262 n.9. This Court, therefore, declines to consider Plaintiffs' retaliatory investigation claim.

Plaintiffs have not proffered sufficient evidence to institute a *prima facie* case of malicious prosecution, so the deprivation of due process does not survive the two year statute of limitations, since Calabria's accrual date is August 4, 2004 and Pasquella's accrual date is November 17, 2004. Similarly, this analysis provides that Plaintiffs may not be able to assert a claim for retaliatory prosecution under the First Amendment. Plaintiffs' § 1983 claims are, therefore, dismissed.

**B.    CEPA**

Plaintiffs allege that Defendants violated CEPA, N.J.S.A. 34:19-1 *et. seq.* for engaging in "whistle-blowing" activity as defined by New Jersey law. CEPA provides that "an employer shall not take any retaliatory action against an employee because the employee . . . discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer . . . that the employee reasonably believes is in violation of a law or a rule or regulation promulgated pursuant to law." N.J.S.A. 34:19-3. CEPA defines "retaliatory action" to mean "the discharge, suspension or demotion of an employee or other adverse employment action

taken against an employee in the terms and conditions of employment." N.J.S.A. 34:19-2(e). CEPA sets forth a one year statute of limitations. N.J.S.A. 34:19-5.

Pasquella's CEPA claim must be dismissed because there is nothing in the record that even suggests that she was privy to the March 8, 2004 letter which demonstrated "whistle-blowing activity." Pasquella's signature does not appear on the letter and there is no indication from the record that she was part of the conversation that precipitated the letter. Moreover, a wrongful termination claim under CEPA accrues on the date of actual discharge and the Supreme Court of New Jersey has interpreted this to mean the last date the employee is paid. See Alderiso v. Med. Ctr. of Ocean County, 167 N.J. 191, 204 (2001). Even if this Court were to accept Pasquella's allegation that she was a victim of retaliatory action, her claim does not survive CEPA's one year statute of limitations because she was last paid on November 17, 2004, whereas Plaintiffs filed the original Complaint on December 26, 2006.

To bring a cause of action pursuant to the CEPA, Calabria must establish: (1) a reasonable belief that employer's conduct violated a law, rule or regulation; (2) whistle-blowing activity; (3) an adverse employment action; and (4) causal connection between the whistle-blowing activity and the adverse employment action. See Maimone v. City of Atl. City, 188 N.J. 221, 228 (2006). Calabria asserts that the statute of limitations did not accrue from his suspension on August 4, 2004, but rather alleges a "continuous tort" stemming from the prosecutor's investigation and the transfers following his reinstatement. Calabria's last transfer occurred on December 18, 2006. Given the remedial nature of this statute, this Court will engage in the CEPA analysis, as the CEPA should be liberally construed. See Keelan v. Bell

Communications Research, 289 N.J. Super. 531, 540 (App. Div. 1996).

The "continuous tort" analysis then proceeds to determine whether the District engaged in a pattern of retaliatory behavior against Calabria that is similar to a hostile work environment claim. The Supreme Court of New Jersey in Green held that CEPA statute of limitations begin to run when the continued course of retaliatory conduct finally ceases. Green v. Jersey City Bd. of Educ., 177 N.J. 434 (2003) (relying on AMTRAK v. Morgan, 536 U.S. 101 (2002) (explaining the distinction between a hostile work environment claim that would fall within the continuous tort doctrine and how a claim based on a discrete act that would not fall within that doctrine)). Morgan established a bright-line distinction between discrete acts which are individually actionable, and acts which are not individually actionable, but may be aggregated to make out a hostile work environment claim. See O'Connor, 440 F.3d at 127. Discrete acts must, therefore, be raised within the applicable limitations period and "cannot be resurrected by being aggregated and labeled [as] continuing violations." Id. at 129. The thrust of the hostile work environment claim looks to whether a pattern or series of acts, that may not be actionable as a discrete act, may constitute a hostile work environment when viewed cumulatively. See Green, 177 N.J. at 447.

Calabria did not suffer from a reduction in pay, but rather claims that he received no incremental pay raises to which he was entitled. Further, Calabria complains that, but for his suspension, he was passed over for promotions that were given to individuals with less seniority and qualifications than he. When the District suspended him on August 4, 2004, Calabria suffered a discrete act defined by N.J.S.A. 34:19-2(e). Calabria, therefore, cannot claim a pattern

of retaliatory conduct. Calabria asserts that the statute should properly toll because he was fearful that filing a suit would forfeit any chance of reinstatement. This Court is not persuaded because "a person with a reasonably prudent regard for his rights should have discerned that the [adverse action] were retaliation," and therefore, fear of reprisal will not toll Calabria's statute of limitations from his suspension. See Villalobos v. Fava, 342 N.J. Super. 38, 51 (App. Div. 2001).

Calabria may, nevertheless, demonstrate that his multiple transfers to different jobs constitute an "other adverse employment action" contemplated by CEPA. Looking to Maimone for guidance, this Court is satisfied that Calabria's transfers constitute an adverse employment action. 188 N.J. 221. In Maimone, the New Jersey Supreme Court upheld the denial of summary judgment because the plaintiff satisfied a *prima facie* retaliatory action. Id. First, the Maimone Court found that an adverse employment action occurred, because although an employee's transfer did not create a demotion in rank, it accompanied a reduction in compensation and loss of other benefits. Id. at 236. Secondly, the Maimone Court found a sufficient inference of a "causal connection" between numerous complaints made to supervisors, the proximity between the complaints and transfers, as well as evidence that would support a pretextual transfer. Id. at 238.

Since being reinstated on September 1, 2006, the District transferred Calabria twice. Calabria complains that both transfers were demotions because his responsibilities decreased and his work became less defined. Calabria does not assert a reduction in salary. O'Connor's non-exhaustive list provides for a denial of transfer, but does not include a transfer, in and of itself, to

constitute a discrete act. 440 F.3d 125. This Court, nevertheless, finds that the two transfers create a hostile environment to constitute an adverse employment action. See Zanes v. Fairfield Cmtys., Inc., No. 05-2288, 2008 U.S. Dist. LEXIS 54513, at *12-13 (D.N.J. July 17, 2008) (stating that a reasonable fact finder could conclude that "[t]he undesirable transfer" along with a meritless discipline deprived the plaintiff of a preferred post); see also Nardello v. Twp. of Voorhees, 377 N.J. Super. 428 (App. Div. 2005) (court found a pattern of hostile and retaliatory conduct because despite no reduction in pay, the plaintiff was given demeaning jobs for his rank); Caprio v. Mineta, No. 04-5805, 2007 U.S. Dist. LEXIS 71920 at *13 (D.N.J. Sept. 27, 2007).

Proceeding to the next step of the CEPA analysis, under the causation prong, Calabria must produce evidence that a jury will find by a preponderance of the evidence that his March 8, 2004 letter provided a "determinative or substantial factor in [the District's] decision" to transfer him to different positions. See Schlichtig v. Inacom Corp., 271 F. Supp. 2d 597, 609 (D.N.J. 2003) (quoting Donofry v. Autotote Systems, Inc., 350 N.J. Super. 276, 296 (App. Div. 2001)). The Third Circuit has focused on the timing of the retaliatory action and any evidence of ongoing antagonism. Id. at 597. While not determinative, courts have permitted an inference of causation where there exists a short interval between the adverse employment action and the protected activity. Id. at 612. Calabria asserts that his transfers "mysteriously ceased when the Amended Complaint was filed alleging continuing retaliation." Calabria confuses his protected activity for speaking out on a matter of public concern when he sent the March 8, 2004 letter, for the filing of this lawsuit. The filing of a lawsuit does not constitute a protected activity. Furthermore,

Calabria does not demonstrate ongoing antagonism or other circumstantial evidence that may present a casual connection.

This Court is satisfied by the District's proffered reason for Calabria's transfer to the Urban Leadership Academy, which is the need for someone with administrative experience in a position of well defined responsibilities. Specifically, the previous supervisor became ill, and the position called for an administrator who could oversee the daily operations. This Court believes that Calabria did not suffer from ongoing antagonism, rather the circumstance of the situation, along with Calabria's credentials, caused this transfer. Additionally, the latest transfer occurred two and a half years after Calabria's March 8, 2004 letter. Finally, Calabria sets forth no pretextual evidence which questions the District's explanation. See Schlichtig, 271 F. Supp. 2d 597. This Court, therefore, finds that a factfinder could not conclude by a preponderance of the evidence that Calabria's protected conduct, stemming from his March 8, 2004 letter, was a determinative factor in his transfers within the District where he worked in supervisory roles and received no decrease in pay. Calabria's CEPA claim is therefore dismissed.

### C.   CEPA Waiver

Defendants assert that the CEPA waiver provision provides that the institution of a CEPA claim waives a party's right to maintain any other common law claim that requires a finding of retaliatory conduct actionable under CEPA. See N.J.S.A. 34:19-8. Defendants overlook that a CEPA claim may also preclude a NJLAD claim as a matter of law. Plaintiffs contend that the District violated this statute when they were suspended because they exercised free speech as a "protected activity" under NJLAD. See N.J.S.A. 10:5-12(d). This waiver provision is limited

-11-

and applies only to claims that are substantially related and requires similar proofs to the asserted CEPA claim. See Bowen v. Parking Auth. of Camden, No. 00-5765, 2003 U.S. Dist. LEXIS 16305 (D.N.J. Sept. 18, 2003); see also Smith v. Twp. of E. Greenwich, 519 F. Supp. 2d 493 (dismissing NJLAD retaliation claims because they arise out of the same conduct as CEPA claims). The Bowen court extended summary judgment to the NJLAD claims because the claims were based on "allegations that plaintiffs were discharged or suspended because they blew the whistle on defendants' violations of law." Id. at 90; see also Zanes, 2008 U.S. Dist LEXIS 54513 at *20 (finding that NJLAD claim "closely resembles, and does not require different proofs" from the CEPA claim). Here, Plaintiffs assert the same protected activity stemming from the March 8, 2004 letter to which they relied upon for their CEPA claim. Plaintiffs' NJLAD claim, is, therefore, waived and dismissed.

Plaintiffs further assert a claim for "state common law wrongful retaliation." Plaintiffs, however, do not set forth the elements to establish this claim, but instead rely on cases which assert a "common law wrongful termination" claim. Similar to Plaintiffs' NJLAD claim, this wrongful termination claim is preempted by CEPA because the causes of action are substantially related. See Young v. Schering Corp., 141 N.J. 16, 29 (1995) ("the waiver provision applies only to those causes of action that require a finding of retaliatory conduct that is actionable under CEPA."). Moreover, to assert an action for wrongful discharge the discharge must be against a "clear mandate of public policy." Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58, 72 (1980). Plaintiffs assert a blanket violation of public policy and do not point to a specific source of this violation. Finally, the District never terminated Calabria and there is no evidence that suggests

Pasquella was privy to the March 8, 2004. Accordingly, Plaintiffs' claim for state common law wrongful retaliation is dismissed.

### D. Remaining State Law Claims

Plaintiffs further assert the claims of malicious prosecution and civil conspiracy claims. For success on a malicious prosecution claim, Plaintiffs must show that (1) defendants instituted proceedings; (2) defendants did not have probable cause; (3) legal malice existed; and (4) the proceedings terminated in favor of plaintiffs. See Wiltz, 249 Fed. Appx. at 950. The Wiltz Court dismissed the plaintiff's complaint for failure to state a claim because although an arrest occurred, the plaintiff did not satisfy the first prong since the complaint lacked allegations of incarceration, posting of a bond, refraining from travel, requiring contact with Pretrial Services or any other deprivation of liberty as a result of the proceedings. Id. at 949. Additionally, the Wiltz Court found that advocating for plaintiff's prosecution was "too conclusory to survive defendants' motions to dismiss." Id. at 950. Plaintiffs have not provided any evidence of an indictment from the Passaic County Prosecutors Office, nor provided any evidence of an arrest. This Court must, therefore, dismiss Plaintiffs' malicious prosecution claim for failure to satisfy the "instituted proceedings" prong.

As for the civil conspiracy claim, Plaintiffs cite to Morgan explaining that a civil conspiracy is a "combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means." Morgan v. Union County Bd. of Chosen Freeholders, 268 N.J. Super. 337, 364 (App. Div. 1993). Plaintiffs allege that there existed a civil conspiracy to institute criminal prosecutions against Calabria. Plaintiffs, however, do not

allege or produce evidence as to how this claim impacts Pasquella. Additionally, Calabria never filed a Notice of Tort Claim to institute this claim. See N.J.S.A. 59:8-8. Finally, Calabria's cause of action accrued on August 4, 2004, and he is therefore beyond the two year statute of limitations. See N.J.S.A. 2A:14-2. For the above reasons, Plaintiffs' remaining state law claims are dismissed.

### IV.   CONCLUSION

For the reasons stated, it is the finding of this Court that Defendants' motion for summary judgment is **granted**. An appropriate Order accompanies this Opinion.

Dennis M. Cavanaugh, U.S.D.J.

Date:    August 25, 2008
Orig.:   Clerk
cc:      Counsel of Record
         The Honorable Mark Falk, U.S.M.J.
         File